DONALD W. TYLER, APPELLEE, v. OLSON BROS. MFG. CO., INC., APPELLANT, IMPLEADED WITH FRANK SVOBODA ET AL., APPELLEES.

266 N. W. 2d 216

Filed May 31, 1978. No. 41530.

Duane L. Stromer, for appellant.

Steven M. Curry of Sampson, Curry & Hummel, for appellee Tyler.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

BOSLAUGH, J.

This case arises out of a controversy concerning the sale of a center pivot irrigation system to the plaintiff, Donald W. Tyler. In 1969 the plaintiff contacted the defendant, Frank Svoboda, concerning the purchase of an irrigation system manufactured by the defendant, Olson Bros. Mfg. Co., Inc. On December 4, 1969, the defendant signed a written "Conditional Sales Agreement" for the purchase of a 9 tower "Hyd.-Prop." Olson Irrigation System. The contract was in the form of an offer to sell made by Olson Bros. Mfg. Co., Inc., which was accepted by the plaintiff. The contract expressly provided, "MAKE ALL CHECKS PAYABLE TO: OLSON BROS. MFG. CO., INC." The contract recited that Olson was represented by Svoboda Sales, Inc., and the agreement was executed with Frank Svoboda as the representative of the seller.

The contract contained an item of $600 for "assembly" and described where and how it was to be installed. The plaintiff paid the full amount of the purchase price, $12,969.01, to Svoboda Sales Co. on December 23, 1969. The irrigation system was delivered to the plaintiff's property sometime before January 1, 1970, and was erected by Svoboda or his employees during the month of January.

The plaintiff first attempted to operate the system sometime between May 1 and May 20, 1970. The plaintiff immediately had trouble with the system. There were breaks and leaks in the oil lines; a plastic tube going to the end gun shut-off melted in two; the water pipe sagged badly in two places; and the system would operate for only a short time and then shut off. The plaintiff testified that he complained to both Svoboda and Olson Bros. and that workmen came out to his farm several times and attempted to

repair the system but were not successful. The field where the system had been installed was planted to potatoes and the crop needed water badly during this time. The situation became so critical that the plaintiff hired a neighbor lady to watch the field and to call him when the system stopped irrigating. The system continued to stop at irregular intervals until the plaintiff himself modified a part of the hydraulic system on or about June 23, 1970.

This action was commenced on December 4, 1970, to recover damages in the amount of $5,976 which the plaintiff alleged he had sustained as a result of defects in the system. The original petition named Olson Bros. Mfg. Co., Svoboda Sales, Inc., and Frank Svoboda as defendants. An amended petition filed in 1974 omitted Svoboda Sales, Inc., as a defendant and substituted, as a defendant in its place, Frank Svoboda doing business as Svoboda Sales Co.

A jury was waived and the action was tried to the court. At the close of the defendant's evidence the action was dismissed as to all defendants except Olson Bros. The trial court found that Svoboda was an agent of Olson Bros.; that the contract for the purchase of the system was between the plaintiff and Olson Bros.; that the system was defective; that the plaintiff had notified Olson Bros. of the defects through its agent Svoboda; and that the plaintiff had been damaged in the amount of $4,002.50. The defendant Olson Bros. has appealed. There is no cross-appeal. There are no issues in this court as to the defendants Frank Svoboda and Frank Svoboda doing business as Svoboda Sales Co. and the appeal has been dismissed as to them.

The principal issues which must be considered and determined in this court relate to the sufficiency of the evidence to sustain the findings of the trial court. Much of the evidence was in conflict and presented issues of fact which were resolved against the defendant Olson Bros.

On the matter of agency the contract, on its face, purported to be a contract between the plaintiff and Olson Bros. The record contains a franchise agreement between Olson Bros. and Svoboda Sales Inc. that was in force in 1969 and a distributorship agreement with Svoboda Sales Company, a corporation, dated January 6, 1968. Carroll Olson, the vice-president of Olson Bros. and one of its major stockholders, testified that the printed form on which the contract with the plaintiff was prepared had been furnished by Olson Bros. or had been prepared by Svoboda "representing us." The executed form was considered to be a purchase order and was the document from which the system sold to the plaintiff was manufactured and delivered. This evidence was sufficient to sustain a finding that as between the plaintiff and Olson Bros., Svoboda was an agent of Olson Bros.

The plaintiff's evidence in regard to the defects in the system has been summarized. Olson Bros. took the position that most of the defects resulted from improper installation and adjustment of the system but there was evidence that some of the defects may have been due to improper design or construction. Since the installation was a part of the contract and had been performed by Svoboda as an agent of Olson Bros. the evidence was sufficient to sustain the finding against Olson Bros. as to the defects in the system.

With respect to damages, the plaintiff was awarded damages for crop damage, the expense of remedying the sag in the water pipe, and the expense involved in discovering and remedying defects in the system.

The general rule is that damages must be proved with as much certainty as the case permits and cannot be left to conjecture, guess, or speculation. Generally, the evidence must be sufficient to enable the court or jury to determine the amount of damages

with reasonable certainty. Crowder v. Allied Investment Co., 190 Neb. 487, 209 N. W. 2d 141.

The award for crop damage was based upon expert testimony as to the reduction in yield sustained by the plaintiff because of inability to irrigate in May and June of 1970 because of defects in the irrigation system. The plaintiff's evidence was that the crop was dry during May and June and suffered from a lack of water; that the yield from this field was 200 bags per acre as compared to the average yield of 250 bags per acre from all his fields; that the maturity of the crop and its harvest was delayed because of the lack of irrigation water in May and June; and that there was a reduction in price for the crop because of the later harvest.

The plaintiff's evidence was reasonably certain and was as specific as could be produced under the circumstances. Evidence offered by the defendant as to the average yield per acre in the county during 1970 was irrelevant and was properly rejected.

The trial court based its award for damages for the expense of remedying the sagging water pipe upon the cost of an additional tower, but limited it to the amount requested in the amended petition. The evidence will sustain an inference that if the extra length of the span between the pivot and the first tower, and the extra length of the span beyond the last tower were eliminated and an additional span and tower were added to the system, the overall length of the pipe could remain the same and the sag could be corrected. There might be other ways to correct the sag but the evidence presented a question of fact and the evidence supports the finding made.

The award of damages for the cost of discovering and remedying defects in the system consisted of $45 paid by the plaintiff to the neighbor lady who watched the system for the plaintiff during the time that it stopped at frequent intervals. This item

amounts to an expense incurred by the plaintiff in attempting to mitigate the damages and prevented the crop loss from being a greater amount.

There being no error in the record, the judgment is affirmed.

AFFIRMED.